Dequan L. BOGAN, Appellant,

v.

DISTRICT OF COLUMBIA BOARD
OF PAROLE, Appellee.

No. 98–SP–512.

District of Columbia Court of Appeals.

Submitted Sept. 1, 1999.
Decided March 23, 2000.

Dequan L. Bogan, pro se.

John M. Ferren, Corporation Counsel at the time the brief was filed, with whom Charles L. Reischel, Deputy Corporation Counsel, and Mary L. Wilson, Assistant Corporation Counsel, were on the brief, for appellee.

Before FARRELL, Associate Judge, and MACK and BELSON, Senior Judges.

BELSON, Senior Judge.

Dequan Bogan appeals the Superior Court's denial of his petition for a writ of habeas corpus. The District of Columbia's motion for summary affirmance was denied by a motions panel of this court which requested that the District brief an argument appellant had not raised—whether Bogan was entitled under 28 DCMR § 233.1 (1987) to be released at least two years before his mandatory release date because he had never been given a conditional release. We affirm.

Appellant was convicted of assault with a deadly weapon, and sentenced on June 6, 1996, under the D.C. Youth Rehabilitation Act of 1985 ("D.C. Youth Act"), D.C.Code §§ 24–801 et seq. (1996 Repl.), to fifty-four months of incarceration. In October 1996, the District of Columbia Board of Parole denied Bogan parole. The order listed five programs that Bogan was required to complete before being reconsidered for parole. The Board held a hearing on July 8, 1997, and again denied Bogan parole. The Board stated that Bogan would not be reconsidered for release on parole until his mandatory release date, August 13, 2000.[1]

Bogan appeals from the Superior Court's denial of his petition for a writ habeas corpus, contending that the Board abused its discretion in denying him parole. But for the possible application of 28 DCMR § 233.1 (1987) to this case, Bogan's contentions on appeal are wholly without merit. On its face and standing alone, the language of that subsection of § 233 can be read to require that a committed youthful offender who has been denied conditional release throughout his or her stay in a facility be released at least two years before his or her mandatory release date.

### I.

After reviewing § 233.1 in context, and considering the youth offender sentencing scheme in effect in the District of Columbia, we are satisfied that § 233.1 is not applicable to one sentenced under the D.C. Youth Act, like Bogan.[2] It provides:

When a committed youth offender has been denied conditional release to supervision by action of the Board throughout his or her stay in a facility or institution, that offender shall be mandatorily released no later than two (2) years prior

to the full term expiration date of his or her sentence.

28 DCMR § 233.1. It is significant that a "committed youth offender" is defined as "an individual committed pursuant to the provisions of 18 U.S.C. § 5010(b) or 5010(c) of the Federal Youth Corrections Act for training and treatment." 28 DCMR § 199.1. Subsections 233.2 and 233.3 discuss application to youth offenders committed pursuant to 18 U.S.C. § 5010(b) and 5010(c), respectively, while subsection 233.4 describes the procedure for mandatory release pursuant to the "Youth Corrections Act." Accordingly, it is clear that § 233.1 was adopted for application to persons sentenced pursuant to 18 U.S.C. § 5010(b),(c) (1982).

A brief review of the recent history of legislative and regulatory provisions regarding the sentencing of youth supports the conclusion that § 233.1 does not apply to a person sentenced under the D.C. Youth Act. Prior to 1984, youth offenders in the District of Columbia were eligible for consideration for sentencing under the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. §§ 5005–5026 (1982). The FYCA, however, was repealed by Congress in 1984 by the Comprehensive Crime Control Act of 1984. PUB. L. No. 98–473, § 218(a)(8), 98 Stat. 1837, 2027 (effective date Oct. 12, 1984). In 1985, the D.C. Youth Act replaced the FYCA. See Smith v. United States, 597 A.2d 377, 380 n. 2 (D.C.1991). The Board has been replaced by the U.S. Parole Commission which has the authority formerly vested in the Board to grant or deny parole to youth offenders who were sentenced under the FYCA prior to its repeal.[3]

Under the FYCA, all offenders were sentenced to six years of incarceration unless a longer sentence was specified by the

---

1. On August 5, 1998, the U.S. Parole Commission assumed exclusive jurisdiction from the D.C. Board of Parole to grant or deny D.C. prisoners parole. D.C.Code § 23–1231 (1999 Supp.).

2. "Youth offender" means a person less than twenty-two years old convicted of a crime other than murder. D.C.Code § 24–801 (1996 Repl.).

3. See D.C.Code § 24–1231(a)(1) & (2) (1999 Supp.).

court. 18 U.S.C. §§ 5010(b),(c). If the court did not impose a longer sentence, the youth offender was entitled to release under supervision within four years of conviction, and unconditional discharge within six years. 18 U.S.C. §§ 5010(b), 5017(c). If the court imposed a longer sentence under the FYCA, the youthful offender was entitled to supervised release two years prior to the expiration of the specified term. 18 U.S.C. §§ 5010(c), 5017(d).

The D.C. Board of Parole implemented the FYCA commencing in 1972. The regulation, currently codified at 28 DCMR §§ 233 *et seq.*, was initially promulgated as Title 9 DCRR Ch. III, § 106 (1972). The regulation has been renumbered, but remains in effect to guide the implementation of the FYCA. The regulation was obviously patterned to implement the FYCA. Two of the four subsections of § 233 contain specific references to the FYCA, §§ 233.2 and 233.3, although subsection 233.1 and 233.4 do not, and the definitions section, § 199.1, defines "committed youth offender" as one committed under the FYCA.

Bogan was sentenced under the D.C. Youth Act rather than the FYCA. Under the D.C. Youth Act, youth offenders are sentenced to an indeterminate sentence, up to a maximum commitment. The D.C. Youth Act, however, unlike the FYCA, provides that a youth offender "shall serve the sentence of the court unless sooner released" by the United States Parole Commission. D.C.Code § 24–803(b) (1996 Repl.). Thus, while the FYCA created a scheme whereby youth offenders were mandatorily released on parole two years prior to the expiration of their sentence, the D.C. Youth Act does not use that scheme but provides that youth offenders are to serve their term in confinement unless released on parole at the discretion of the Board. The plain texts of 28 DCMR §§ 199.1 and 233.1 apply only to youth offenders sentenced pursuant to the FYCA, rather than to persons like Bogan sentenced under the D.C. Youth Act.

Thus, Bogan is not entitled to be released at least two years before his mandatory release date.

## II.

Bogan, citing the Board's own regulations, also argues that the decision of the Board was in error because he completed all of the programs the Board had listed in the 1996 order as mandatory before reconsideration and was, therefore, entitled to be released on parole. "We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision." *Smith v. Quick,* 680 A.2d 396, 398 (D.C.1996) (citing *Bennett v. Ridley,* 633 A.2d 824, 826 (D.C. 1993)). Further, "the District's parole scheme does not create ... a liberty interest in the granting of parole." *Id.* (citing *McRae v. Hyman,* 667 A.2d 1356, 1361 (D.C.1995)). Accordingly, Bogan cannot prevail on this contention.

## III.

Bogan avers by affidavit that he was not served with a copy of the District's answer to the Superior Court's order to show cause why a writ of habeas corpus should not issue, and therefore was denied an opportunity to traverse the return, as permitted by D.C.Code § 16–907 (1997 Repl.).

When a prisoner files petition for a writ of habeas corpus, "if the facts set forth in the petition make a prima facie case, [the court] shall forthwith grant the writ...." D.C.Code § 16–1901(a). Once the writ has been granted, the authority detaining the prisoner must "make return of the writ and cause the person detained to be brought before the court or judge, according to the command of the writ." D.C.Code § 16–1902(1). Only then may the prisoner "traverse the return thereto." D.C.Code § 16–1907.

In this instance, Bogan filed a petition for a writ of habeas corpus. The Superior

Court, without determining whether the petitioner had made out a *prima facie* case, issued an order directing the District to show cause why the writ should not issue and ordered the District to serve Bogan with its answer. The District filed its answer and appended a certificate of service upon Bogan. The Superior Court then denied the petition, and did not issue the writ. Because the writ had not been granted, the authority detaining Bogan was not required to "make return of the writ...." D.C.Code § 16–1902(1). Therefore, technically, Bogan never acquired a right to "traverse the return." In proceeding by show cause order, the Superior Court acted properly in ordering the District to serve Bogan with its answer to the show cause order. *See generally,* Super. Ct. Civ. R. 5(a); *see also, Irani v. District of Columbia,* 292 A.2d 804, 806 n. 9 (1972) (dicta) (habeas corpus applications governed by rules of civil procedure (citing 9 Moore Federal Practice, 919 (2d ed.1970))). We need not resolve the factual question of whether Bogan was actually served because Bogan has had the full opportunity to present his substantive claims in this appeal, and we find them lacking in merit.

### IV.

Accordingly, we affirm the order of the Superior Court denying Bogan's petition for a writ of habeas corpus.

*Affirmed.*