David CRUM, Petitioner,

v.

UNITED STATES PAROLE
COMMISSION,
Respondent.

Civ. A. No. 92–1555.

United States District Court,
District of Columbia.

Jan. 14, 1993.

David Hall Crum, pro se.

Penny Marshall and Rita Pendry, Federal Public Defenders Office, Washington, DC, for petitioner.

John M. Facciola, Asst. U.S. Atty., Washington, DC, Kristie Stafford, Office of the Gen. Counsel, U.S. Parole Com'n, Chevy Chase, MD, for respondent U.S. Parole Com'n.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

The Petitioner, David Crum, filed the instant action *pro se* and *in forma pauperis* requesting a Writ of Habeas Corpus. Petitioner, now represented by the Federal Public Defender, requests that this Court reconsider an Order entered on October 15, 1992 which granted the U.S. Parole Commission an additional enlargement of time within which to show cause why a Writ of Habeas Corpus should not be issued. In effect, Petitioner states that because he is incarcerated in a D.C. prison and is a parolee from a D.C.Code violation, he should not be in the custody of the United States Parole Commission. He claims that the additional period of time given to the respondent to reply to his last motion is prejudicial and violative of his due process rights. Accordingly, he demands that he be immediately released, or put into the custody of the District of Columbia Board of Parole.

### BACKGROUND:

The Petitioner, David Crum, was convicted of Burglary in the District of Columbia on August 9, 1978 and sentenced to 10 to 31 years of imprisonment. During his period of imprisonment Mr. Crum was also convicted of escape and was sentenced to a one year term which ran consecutive to the original sentence. Mr. Crum was released on parole from Levenworth Penitentiary on November 26, 1991. On February 18, 1992, Petitioner's probation officer requested that the Commission issue a parole violation warrant because

Petitioner had been arrested for burglary in Montgomery County, Maryland, and was in violation of his parole. A United States Parole Commission violator warrant was issued on March 20, 1992, and executed on April 6, 1992. This warrant was supplemented on April 20, 1992, after Petitioner was charged with burglary in the District of Columbia. Petitioner is now confined in the District of Columbia's Department of Corrections Penitentiary in Lorton, Virginia.

A preliminary interview with Mr. Crum was held on April 8, 1992. The interviewer reviewed all charges with the defendant, who denied all of them. However, based upon the credible information the interviewer found that there was enough probable cause to find that Petitioner had violated the terms of his parole. Accordingly, the interviewer recommended that Petitioner be kept in custody.

Between July 2, 1992, and September 16, 1992, Mr. Crum filed three *pro se* habeas corpus petitions against the United States Parole Commission. A revocation hearing was scheduled for September 10, 1992, but was delayed upon the request of new counsel who needed time to review the record.

A new date for the hearing was scheduled for October 1, 1992. Petitioner was granted another continuance on the request of his attorney, so that the attorney could properly prepare for the hearing. A signed waiver confirming this request is in the record. Petitioner contends that the Commission forced him into signing the waiver.

At present Petitioner remains incarcerated in the Lorton, Virginia, penal facility.

## ANALYSIS:

■ Petitioner's primary argument is that the United States Parole Commission Board should not be given more time to respond to his writ, because it does not have jurisdiction over him. Petitioner argues that the statutory jurisdictional authority Congress granted to the Commission over District of Columbia Code violators does not extend to D.C.Code violators incarcerated presently in a District of Columbia prison.

Petitioner contends that the jurisdiction to execute a parole violation warrant is surrendered by the United States Parole Commission once that individual is in District of Columbia custody. In particular Petitioner believes that the cases of *Cosgrove v. Smith*, 697 F.2d 1125 (D.C.Cir.1983), and its progeny *Cosgrove v. Thornburg*, 703 F.Supp. 995 (1988) support the proposition that the situs of incarceration determines which parole board or commission should control the mandatory review hearing. Accordingly, an analysis of those cases and the one at bar is necessary.

In *Smith*, the United States Court of Appeals for the District of Columbia Circuit reversed and remanded a class action suit brought by male prisoners against the United States Parole Commission. Their complaint, which the District Court dismissed by summary judgement, challenged the categorization of parole guidelines by gender. Specifically, the male prisoners objected to the revised guidelines under which all female prisoners in federal detention incarcerated on the basis of a D.C.Code offense were to have their parole hearings before the District of Columbia Board of Review. Male prisoners, however, were still subject to either D.C. review or Federal review, depending upon the location of their incarceration.

The *Smith* Court held that in the interest of equity and justice, an interpretation of D.C.Code § 24–209 by the District Court was necessary. In particular the Court of Appeals ordered that the District Court examine whether there was a substantial difference in parole suitability determination under Federal and District of Columbia guidelines and whether the U.S. Commission has a legitimate interest in applying federal parole standards to D.C.Code offenders. *Smith*, at 1135.

On remand the District Court held that ... "Congress intended, in enacting § 24–209, that all of the laws and regulations applied by the D.C. Board be utilized by the U.S. Commission as well." *Thornburg*, at 1004. In other words, § 24–209 was to reconcile the differences between the two parole agencies. Among the differences the District Court noted are:

... For example, while the Board did adopt the idea of a Salient Factor Score from the federal guidelines, the factors employed to reach this score are different. The Board utilizes four factors to determine suitability for parole: two pre-incarceration factors and two post-incarceration factors. This is done to ensure that the prisoner's behavior while incarcerated is considered. The Commission use only two pre-incarceration factors, thus de-emphasizing any rehabilitative results from incarceration. Moreover, while the pre-incarceration factors are similar the failure of the U.S. Commission to consider post-incarceration behavior in reaching a parole decision renders the two systems substantially dissimilar.

This Court's analysis of § 24–209 is in accordance with that of the *Thornburg* Court. However, this Court does not believe that the United States Parole Commission should be compelled to surrender its authority over a parole violator just because he or she is housed in a District of Columbia jail. The fact that Petitioner was originally sentenced as a District of Columbia Code violator has no bearing on who should review a parole violation. Once a person convicted of a District of Columbia code violation is committed to a Federal penitentiary, he or she becomes a member of the general inmate population. An inmate in a Federal facility has his or her parole hearing before the United States Parole Commission. The only caveat is that D.C.Code violators have their review under D.C. guidelines. It was in this fashion that Mr. Crum's parole was granted.

This Court finds that the United States Parole Commission is the sole place to review Mr. Crum's petition. A parolee, such as Mr. Crum, who was incarcerated in a Federal penal facility, and who has violated terms of parole should have his petition reviewed by the same group which originally granted his parole. The simple fact is the U.S. Parole Commission alone possesses all the relevant information about Petitioner's case and is the appropriate agency to exercise jurisdiction over Petitioner.

Petitioner further argues that even if the respondent is properly exercising jurisdiction over him, the U.S. Parole Commission has failed to hold a timely parole revocation hearing. 18 U.S.C. 4214(c) and 29 C.F.R. § 2.49; *Morrissey v. Brewer,* 408 U.S. 471, 480, 484, 92 S.Ct. 2593, 2599–2600, 2601–2602, 33 L.Ed.2d 484 (1972). Specifically, Petitioner contends that since he was not given a parole review hearing within a 90–day period, that the respondent must relinquish control over him.

Petitioner was offered a hearing on September 10, 1992, more than 90 days from the date that Petitioner was arrested on his parole violation warrant. 18 U.S.C. 4214(c). The United States Parole Commission concedes that Petitioner was not given a Parole Review hearing within the 90–day period but believes that because its actions were neither in bad faith nor prejudicial to Petitioner, Petitioner's rights were not violated.

A "reasonable" period of time within which a parole violator review must be held is 90 days. 18 U.S.C. 4214(c), *Morrissey v. Brewer,* 408 U.S. at 478, 92 S.Ct. at 2598–2599. However, the habeas relief recognized in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), is only available where a petitioner establishes that the Commission's delay in holding a revocation hearing was both unreasonable and prejudicial. *See, Sutherland v. McCall,* 709 F.2d 730 (D.C.Cir.1983); *Goodman v. Keohane,* 663 F.2d 1044, 1046 (11th Cir.1981). A period of time in excess of 90 days has not been held to be *per se* violative of due process rights. Since Petitioner cannot show that he has been prejudiced by the delay, his action must fail.

Accordingly, Petitioner's motion to have this Court reconsider its motion granting additional time to respondent is denied.